1833.

AT. IN. CO.
v.
STORROW.

THE ATLANTIC INSURANCE COMPANY vs. STORROW and another.

---

Underwriters are entitled to all remedies which the assured had against the master and owner ; and the assured cannot transfer them to the latter so as to defeat such remedies.

And where a judgment was had against underwriters upon a total loss, and the assured received the amount from the owner and assigned the policy and gave up the bill of lading to the latter, IT WAS HELD, that the underwriters should be credited on the judgment the amount for which the master or owner was liable.

---

IN the month of February one thousand eight hundred and thirty-one the defendant Thomas W. Storrow shipped a box of specie on board one of the Havre packets at New York. He took from the master a bill of lading, in the usual form, conditioned for the safe delivery of the specie at Havre. He also effected an insurance upon it with the complainants. Two days afterwards, while the ship was lying at the wharf and before her departure on the voyage, the box of specie was stolen and never recovered.

*May 6. 1833.*

*Insurance. Underwriter's right to the spes recuperandi.*

The assured, Storrow, abandoned the property to the complainants ; and claimed payment for a total loss. They refused ; and an action was commenced against them upon the policy in the superior court of the city of New York.

During the pendency of the action or before it was commenced, for the time did not distinctly appear, the ship owners paid Storrow the amount of the loss ; and he assigned the policy and all claim thereon to the other defendant John T. Boyd, for the benefit of the ship owners. The bill of lading was also given up to Boyd. The action was then continued (in the name of Storrow) for the benefit of the ship owners ; and a judgment was rendered thereon against the present complainants. The lat-

1833.

AT. IN. CO.
*v.*
STORROW.

ter immediately gave written notice of their readiness to pay the amount of the judgment, provided the bill of lading was assigned to them, with the remedy upon it unimpaired against the ship master and owners ; at the same time adding, that unless this was granted, they should resort to the court of chancery for relief. In reply, they were informed of the bill of lading having been, long previous thereto, delivered up to the master and cancelled. This was the first information they received of the fact. They had supposed, as they alleged, that the bill of lading was outstanding in the hands of Boyd, the assignee.

The complainants insisted, by their bill, that by virtue of the abandonment they became invested with all he rights of the insured against the master and owners of the ship and were entitled to the bill of lading and to the remedies upon it for their reimbursement. They also insisted that, as the defendants had cancelled the bill of lading and deprived them of such remedies, they ought not, then, to demand payment of the judgment : or, if they were entitled at law to enforce the recovery, still the defendants must account for the amount received from the owners or master or for what might have been received or recovered upon the bill of lading provided the same had not been cancelled. The bill prayed relief accordingly ; and for an injunction to restrain the defendants from enforcing the judgment.

The defendants admitted the facts set forth in the bill,

Mr. *D. Lord, Jr.* for the complainants,

Mr. *John Anthon,* for the defendants.

*May* 13.

The VICE-CHANCELLOR. The question in this cause is not entirely free from difficulty. It is to be looked upon as a point between the insurer and the ship owners : that is to say, which shall bear the loss ?

The defendant Thomas W. Storrow has no longer any interest in the matter. He is a nominal party, having been satisfied by the ship master or owners. The latter were liable to him

upon the bill of lading or by the custom of merchants; as were the insurers upon the policy. He made his claim upón the insur- ers in the first instance, gave written notice of abandonment, furnished the requisite preliminary proofs, and claimed indemnity from them. They refused to pay.

It is conceded by the counsel for the defendants, that if the complainants had accepted the abandonment, they might have protected themselves by taking an assignment of the bill of lading and thereby have fixed the loss upon the master and ship owner, whose only chance of reimbursement would then have been the *spes recuperandi* of the property stolen. But, as the underwriters refused to pay the loss, thereupon it is contended, the insured was at liberty to call on the master and owners, and if either of them chose to pay, then they each had a right to protect themselves by cancelling the bill of lading and taking an assignment of the policy: in which event the underwriters could only rely upon the *spes recuperandi* of the specific property for their reimbursement.

In support of these points it is argued, that the abandonment in the one case and the title accruing to the ship owner, by payment, in the other, are similar *titles to the specific articles merely*, but that neither of such titles carry any collateral contract made in relation to the subject matter; that, to give a title also to this, an assignment was necessary and the ship-owner has, in this instance, secured both titles to himself, namely, a title to the specific property, as well as to the contract collateral by taking an assignment of the policy. And further to uphold this argument, it is said, the rights of the parties were equal, but the ship owner, by his promptitude in paying the loss and procuring an assignment of the policy, has acquired a priority and right which is now to be preferred over that of the underwriter, who would not accept of the abandonment or pay the loss, but disputed his liability and slumbered throughout on his rights; and that *qui prior est tempore potior est jure* applies and ought to have a controlling effect, especially since, under the assignment of the policy, the ship own-

er has proceeded against them by an action and obtained judg-
ment.

This argument seems, at the first blush of it, to come with
considerable force. It has certainly the merit of great plau-
sibility. Nevertheless, there are some tests to which it must
be subjected, before I can admit it to be conclusive ; and one
is, to enquire whether the insurer and the ship owner are
equally innocent in respect to a loss happening by private
stealth ? According to the decision of the superior court in the
action upon the policy, this was one of the perils against
which the party was insured. It is also an event for which
the law holds the ship owner responsible as a common carrier.
It supposes him able to guard the property entrusted to his
care against loss by such means; and to prevent any thing
like connivance or collusion and in order to induce the carrier to
use the utmost vigilance, the law never stops to enquire how
far it is owing to his negligence—although, his omission or
failure must be attributable in some degree to a want of care.
He has possession of the property ; and can employ as many
servants of his own selection to aid in the safe keeping of it as
he may think proper. There is not only his contract to carry
and deliver safely, but, from the special confidence reposed in
him, arises a moral obligation on his part to protect the prop-
erty against theft and such casualties as are within the range
of human foresight to prevent.

The underwriter has no possessory right ; and, of course,
has not the same facilities of affording protection. If a loss
occurs by any of the perils against which he has insured, it is
his contract and that alone which renders him liable.

The ship owner and the underwriter do not, therefore. stand
in the same favorable light ; and it cannot be said that they are
equally innocent when a loss occurs by such means as the
former might have prevented.

But, to apply another test. What is the effect of an aban-
donment, when such a loss happens as will warrant the assur-
ed or those entitled to the benefit of the policy in making an
abandonment and claiming a total loss ? Here I would observe,

that the abandonment was made either by the ship owner after he obtained the policy by assignment or he adopted the abandonment previously made by Mr. Storrow the assured : for he proceeded in the action at law for a total loss and a recovery could only have been had to the full extent upon the ground of the subject matter of the insurance being actually abandoned to the complainants—and this was originally either the act of Boyd or became his, by adoption. What then was its effect? Elementary writers on the subject of insurance state the rule broadly, that from the time an effectual abandonment is made, the insurer stands in the same situation as the owner with respect to the property insured ; and it divests the owner of all his rights in favor of the party to whom the abandonment is made : *Hughes*, 432. And this rule, says the author we have referred to, has been carried so far in equity that if the insured, after having received the amount of a loss, obtain satisfaction for it *aliunde*, the underwriters have been held entitled to such satisfaction. He is fully supported in this by the cases growing out of Spanish reprisals : *Blaauwpot* v. *Da Costa*, 1 *Eden*, 130 ; *Randall* v. *Cochran*, 1 *Ves. Sen.* 98. And Marshall and Park, in their works on Insurance, are equally strong and explicit on the point. The reason of the rule is clear : the insurer, by accepting the abandonment or being compelled to pay the loss without abandonment, where none is actually necessary, becomes the owner of the subject matter of the insurance and is entitled to all that may be collateral or incidental to the ownership. Thus, it has been held, that the underwriters on the ship, and to whom she was abandoned on being captured, were entitled, by reason of the transfer, to the subsequent earnings of freight upon her recapture and the performance of her voyage, although the freight was insured by other underwriters who, upon abandonment to them, paid a total loss: *Case* v. *Davidson*, 5 *M. & S.* 79 ; *Davidson and others* v. *Case*, 2 *Brod. & Bing.* 379.

The rule is laid down still more particularly in *Philips on Insurance*, 464. It is there observed, that an abandonment or a mere payment of a loss, whether partial or total, gives the in-

surers an equitable lien to what may be afterwards recovered from other parties on account of the loss ; and the author instances barratry or misconduct of third persons with a loss paid on that account, and where, subsequently, the assured recovers the damage from the master or other persons whose misconduct was the occasion of the loss. No adjudged case of the sort is cited, but the principle is adduced from what was said by *Kent*, Chief Justice, in *Gracie* v. *New York Insurance Company*, 8 *J. R.* 245, on the subject of the *spes recuperandi* and from the doctrine of other cases to which the author refers.

The law on this subject has undergone an elaborate discussion in the case of *Comegys* v. *Vasse*, 1. *Peters, U. S. Rep.* 193. This was a suit between the party who had been an underwriter and paid heavy losses from Spanish captures and his assignees in bankruptcy under the former bankrupt laws of the United States in relation to a sum of money awarded by the commissioners under the Florida treaty on account of those captures and losses. The case necessarily involved the question as to the nature and effect of an abandonment for a total loss ; and this Judge *Story* examined with his usual ability. His opinion, delivered as the opinion of the whole court, establishes, amongst others, the following principles : that by the act of abandonment the insured renounces and gives up to the underwriter all right, title and claim to what may be saved or recovered, whether of the specific property itself or its proceeds or through the course of judicial process or otherwise ; that the abandonment passes not only the property itself, but its proceeds, if restored, as well as any compensation awarded by way of indemnity for the same ; that any indemnity, however it may arise, is to be considered as travelling with the right of property and is a trust for the benefit of the insurer after he has paid the loss ; and that it all belongs to the *spes recuperandi*, the benefit of which passes by the abandonment : because no allowance or deduction can be made for such a hope after the loss has been adjusted and paid. And, in that particular case, the court considered that the right to in-

1833.

AT. IN. CO.
v.
STORROW.

demnity for an unjust capture, whether against the captors or the sovereign, whether remediable in his courts, by grants upon private petition or obtained through public negociation, is a right attached to the ownership of the property and passes by cession to the use of the ultimate sufferer.

Upon these principles, sanctioned originally by Lord *Hardwicke* and which have been allowed by the highest authority in this country, it appears to me very clear, that the complainants in this cause would have been entitled, by virtue of the abandonment and upon payment of the loss to the defendant Storrow, to all the rights and remedies which he possessed or might have had against the master or ship owner, for indemnity. How the insured and the ship owner, by any arrangement between themselves, can deprive the complainants of such a right, while they are concerting measures to compel them to pay the loss, I am unable to perceive. If the right to the remedy over, upon the bill of lading or on the custom, travelled with the right of property and formed with other chances, the basis of the *spes recuperandi*, and to which the insurer is entitled upon paying the loss, then it follows he has a right to it when he pays—whether the assured or his assignee of the policy is the party to receive. If the assured himself cannot receive payment of the underwriter for a total loss and, at the same time, retain the hope of recovering the specific property or the right of compensation from the third persons by whose misconduct or fault the loss has happened (which it is very certain he cannot for his own benefit,) then it is equally certain he cannot transfer any such power of reservation with an assignment of the policy to another or relinquish it to the person ultimately liable to make good the loss to the prejudice of the underwriter.

These reasons outweigh in my mind the argument which has been adduced in behalf of the defendants in this case, however ingenious and convincing it may, at first, have appeared.

It is unnecessary to inquire how it has happened that a judgment in the action upon the policy for the loss in question, has been recovered against the present complainants: for from the disclosures which they obtained in the progress of

1832.

AT. IN. CO.
v.
STORROW.

this suit, evidence of the receipt of amount of loss by the assured from the ship owner seems to have been in their possession; while, upon the authority of the case of *Goodsall* v. *Boldero*, 9 *East*, 72, a valid defence, it seems to me, might have been made on this ground. It does not appear from the bill and answer whether the evidence was produced or offered and overruled. It is alleged, that the complainants did not know, until after the judgment was rendered, of the cancellation of the bill of lading. But this fact, I should say, was not essential to the defence at law.

It has been made a point on the hearing, although not set up as an objection or matter of defence in the answer, that the complainants not having made their defence at law upon the ground on which they would now ask relief in this court, as they might have done, therefore the judgment is a conclusive bar and cannot be opened in equity to give them the benefit of what might have been a defence.

There might perhaps be something in this point. But, as it is clearly a matter in which law and equity have a concurrent jurisdiction, as now presented, and inasmuch as the same matter is not shown to have been set up and passed upon in the action, I think the complainants are not precluded from using it in this court,

My conclusion is, that an equity exists in favor of the complainants which entitles them to the protection of this court against the payment of the loss, unless they can have the benefit of the legal remedy against the master or owner for what they might be liable to pay. This is the equity as between the complainants and the defendant Storrow. Inasmuch, however, as he has been paid and the defendant Boyd stands in his place as representing the rights and interests of the master and the owner of the ship and is the person claiming the benefit of the judgment, I shall decree that the complainants be allowed, by way of credit upon the judgment, the amount which the master or owner would have been liable for; together with their costs of this suit.