By the Court,
Robertson, Oh. J1.
The plaintiffs in this case, if they were assignees of the cause of action before any settlement-made by the defendants with the consignees, unless such defendants had no notice of such assignment, were entitled to recover. So, too, if they, had legal right in equity to such assignment before such settlement, and the defendants knew the facts out of which such equitable rights arose, a settlement made in fraud of such right would be void. It has been frequently held in the courts of this state, as well as those of Massachusetts, that where an owner of goods insured and damaged by perils insured against, abandons all “ spes recuperando” to the underwriter, the latter on paying the loss is entitled to be subrogated to all the rights of the insured to recover against third parties who caused the damage by neglect or otherwise. (Atlantic Ins. Co. v. Storrow, 1 Edw. 621. S. C. 5 Paige, 285. New York Ins. Co. v. Roulet, 24 Wend. 513. Rogers v. Hosack’s ex’rs., 18 Wend. 319. Etna Fire Ins. Co. v. Tyler, 16 id. 385. Hart v. Western R. R. Co., 13 Metc. 99.) And the entire destruction of the subject of insurance, (Mayor of N. Y. v. Pentz, 24 Wend. 668, opinion of Verplanck, senator, 671,) or the payment of. the loss, (New York Ins. Co. v. Roulet, 24 Wend. 317, per Edwards, senator,) has been considered equipollent with an abandonment in giving the insurer such right of subrogation. In the case of a common carrier, it is true, the owner of goods transported by him may, by agreement, give him the benefit of an insurance on them effected by such owner so as at least to deprive the underwriter of any remedy against such carrier, although such insurance was made without knowledge by the underwriter of the agreement with such carrier. (Mercantile Mutual Ins. Co. v. Calebs, 20 N. Y. Rep. 173.) In fact such carrier is an insurer as well as the underwriter, and their rights seem to depend entirely on the action of the owner, who may by previous *270 agreement give either the preference in having a claim against the other in case of a loss.
The referee in the present case appears to have assumed that an abandonment of some kind was necessary to entitle the plaintiffs to recover. He states in his report that the plaintiffs “ by reason of” an abandonment which he. had previously found as a fact, and the payment to the consignees of the amount of their loss, “ as well,” meaning undoubtedly “ as much,” “ as by virtue of the assignment to them,” acquired the rights of the consignees. That he meant that such rights were acquired by either means separately and indifferently, I think is evident from this contrasting the phrases “by reason of” and “by virtue of,” as well as from his nseof the word “subrogated" to express the mode of acquiring such rights, which is not appropriate to an assignment, and his succeeding statement, “ that the circumstances of the case constituted notice to the defendants of the intervening rights of the plaintiffs,” (not as assignees but) “ as insurers of the property injured,” and that therefore “ their settlement ® * was without effect on the previously acquired rights of the plaintiffs.” I cannot doubt, therefore, that the referee meant to rest his conclusions as much, if not more, on the right of the plaintiffs as insurers to whom the consignees had by other means transferred all their interest in the goods, than on their right as assignees, particularly as he does not speak of any express or implied notice of the assignment as such before the settlement, which would be necessary to defeat it.
There is no evidence in this case of a direct and formal relinquishment by the consignees of all their interest in the damaged grain to the plaintiffs, and the question of its abandonment as a fact is therefore not without difficulty in this case. The preliminary steps of possession taken by the plaintiffs of such damaged part by direction of the defendants, after a series of notices of the loss, first by the latter to the consignees, then by them to the plaintiffs, and finally some negotiation between the parties to this action, did not constitute an abandonment. Nor would the mere sale of part of the cargo *271 and the receipt of its proceeds by the plaintiffs, unless by the consent of the consignee, operate as such. In fact at the time when the plaintiff thus took possession of the cargo, it was still in possession of the defendants as carriers, and they only delivered it to the plaintiffs to take charge of it for the parties interested. There is no direct evidence that the consignees at that time had any agency in the transfer of the property. Subsequently, however, their agent, in the very receipt given by him to the agent of the defendants, on the 9th of May, 1861, and which they claim to be a settlement, admitted that the damaged grain had been received by the consignees at Fort Plain, thus recognizing the delivery to the plaintiffs as a receipt by themselves. The damaged grain having been sold by the agent of the plaintiffs, and its proceeds received by them, they settled with the consignees as for a total loss of the damaged grain, without regard to such sum so received. That evidence was certainly strong enough to have defeated any action by the consignees against the plaintiffs for the conversion of such damaged grain. I think it was also evidence from which the referee was at liberty to infer an abandonment of the damaged grain. . (See New York Ins. Co. v. Roulet, 24 Wend. 513.) And if necessary for the determination of the case, we ought not to disturb his finding upon that point.
I am, however, inclined to think that even the payment of the loss alone, particularly as a total one, of the grain damaged, entitled the plaintiffs to be subrogated to the rights of the consignees, so far as such loss was concerned. Otherwise the consignees would be entitled to double compensation, and the policy of the plaintiffs become a mere wager one," since the consignees were entitled to be fully indemnified by the defendants, who were in fact equally insurers. In such case, neither would be entitled to recover against the other what they might be compelled to pay. In this very case, the consignees received fifty dollars from the' defendants for damage to the cargo, which was not credited to the plaintiffs in their settlement with them. On the payment of a partial loss, the inchoate right or equity of the plaintiffs must become complete, be *272 cause there can be no abandonment. In the case of The Mayor &c. of New York v. Pentz, (24 Wend. 668,) it was held that the plaintiffs were entitled to recover' the full value of property destroyed by municipal authorities to prevent the spread of a conflagration, without regard to an insurance made thereon, because the insurers were entitled to be subrogated, or to a reduction of their liability to the extent of the amount recovered from the city, without regard to an abandonment which would have been useless. It is laid down in a case in the same volume of reports, (The New York Insurance Company v. Roulet, 516,) that the mere payment of the loss by an underwriter entitles him in equity to what may be recovered from other parties on account of the loss, and necessarily to be subrogated so as to recover such money, and nothing is said of abandonment. In The Atlantic Insurance Company v. Storrow, (ubi supra,) a cancelment by the owner of goods, of a bill of lading, and a discharge of the ship owner from liability for the loss of such goods by thieves, was held to entitle the insurer in equity, after a judgment against him for the loss, to be relieved from it, and no question was raised of any necessity of abandonment. Of this equity of the plaintiff the defendants were bound to take notice, as they knew of the policy and invited the plaintiffs to take possession of the goods for the benefit of all parties ; and any settlement made by them was subject to such rights.
If the plaintiffs could entitle themselves by any act, to take the place of the consignees, in prosecuting the defendants for the damages to the grain, caused by the negligence of the latter, a settlement between the defendants and consignees for fifty dollars, of all claim for such loss admitted to have been over two thousand dollars, with knowledge of the facts out of which the right of the plaintiffs arose, and of the extent of the loss, would have been a fraud on them. But in fact, on the evidence, the referee was not bound to find that any such settlement took place. He has ignored it in his report, and in order to sustain that, we may and must presume he found against it, if the evidence justified such finding.
*273 The receipt, on the back of which, according to the testimony of the plaintiffs’ agent, the figures or details of the supposed settlement were made and given, was merely for the cargo.delivered in New York, and such agent was unable to recollect what was said about the part of the cargo delivered at Fort Plain. All the items in such statement, except the one for fifty dollars, refer expressly only to the grain delivered in New York. That item is stated tobe for “general average,” which clearly is not applicable to a claim of damages for a loss by negligence. Two witnesses, (Requa and Higgins,) state that it was the custom to deduct such sum on the settlement of all freight bills for grain in bulk. Such indorsement states the charge to be for freight of the amount delivered in New York, and no charge is made for freight of the damaged cargo. The written document, therefore, which is constituted of the receipt and statement indorsed, together, purports to relate only to the delivery, freight and allowances in reference to the grain brought to New York, and only refers to the residue to state it was received at Fort Plain, and without making any charge for transportation, which by the bill of lading was to have been fifteen cents per bushel. If all the damage to the cargo, for which the defendants were responsible, was only fifty dollars, or that was for general average or some other customary allowance, they were clearly entitled to freight %>ro rata, yet nothing seems to have been said of it.
The express character .of' such written document was not varied by the other testimony of the agent of the plaintiff, (Stout.) All he could say of the claims made by the agent of the consignees (Requa) was “that he claimed the difference between the cargo delivered and what the bill of lading called for.” He made no other claim for damage than the one referred to, that “ they claimed for shortage ; * that the delivery was short fifty-six bushels, and that they should be allowed for that; ” but he further states that “ they also claimed to be allowed for damage to the cargo, in addition to the sum of fifty dollars; which was also agreed to and allowed.” No such claim appears in the statement, nor does it appear what *274 was the amount. He could not tell how they got at the sum of $50, and could not recollect, after the lapse of four years, what was said about the portion of the cargo not delivered, although it was talked about. And he first testified that he did not know that part of the cargo had been stored, nor could he say that he had been informed that it had been either stored or sold, yet subsequently, when speaking of the conversation as to the damaged cargo, he states that he “knew a part had been taken out and sold, and that there was a loss.” He says “ the item in the bill, less for general average, is what he called the damage.” Mr. Requa, the consignees’ agent, thought, (as he testified,) that the claim for the damaged portion of the cargo was not embraced in the settlement. He did not recollect any discussion, or any thing said or done about the damaged portion of the cargo. With so plain an exclusion of all consideration of the damage to the part of the cargo not brought to Hew York by the receipt and statement indorsed, it w'ould be dangerous to trust to the imperfect recollections and vague statements of one of the parties to such settlement, after a lapse of four years, where a claim of $2000, on the one side, is alleged to have been relinquished for $50, and all claim for over $260 for freight, waived on the other, without the slightest recollection of any discussion of the claim by either party. The referee was, therefore, warranted in disregarding such transaction as a settlement of the present claim.
I have not been able to discover how the blank form of a policy of insurance read on the trial had any thing to do with this case. Ho connection is shown by other evidence, between it and any of the parties, or any document or transaction. It is said to have been read in evidence. Some proof must, therefore, be presumed to have been given in relation to it, or admission made as to its authenticity,- as the only objection was to its competency as between the parties to the action, and not to any want of proof. It might have been made relevant by other proof connecting it with other transactions, such as evidence that it was the form of the policy adopted by the plain *275 tiffs with the consignees of the.cargo in question, and was, therefore, not necessarily to be excluded when offered. No motion was made to strike it out; the referee was not called upon to disregard it, and it does not seem, to have affected his decision; no advantage,, therefore, can now be taken of its admission.
There is apparently no evidence in the case to sustain the referee’s finding of a settlement between the consignees and defendants three days after the assignment to the plaintiffs, although Mr. Requa does testify that he paid Mr. Stout a certain sum ($257.38,) as part of the sum due according to the previous settlement, and “ took a receipt, the one already produced in evidence.” No such receipt appears in the case, but the sum is the same as that specified in the imaginary receipt set out in the referee’s report. Such a receipt, if it existed, would have a strong bearing upon the question of any prior adjustment of the claim for damages, if given with knowledge of the assignment; but it is not before us, and may be considered as stricken out of the report, with whose findings of fact and legal principles it does not interfere ; particularly as no exception was taken to the finding of fact based upon such receipt.
The judgment should, therefore, be affirmed, with costs.